UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J. HENDERSON,

        Petitioner,               CIVIL ACTION NO. 06-12120

        v.                            DISTRICT JUDGE LAWRENCE P. ZATKOFF

WILLIE SMITH,                 MAGISTRATE JUDGE VIRGINIA M. MORGAN

        Respondent.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This 28 U.S.C. § 2254 case comes before the court on Petitioner's Application for Writ of Habeas Corpus. For the reasons stated below, the court recommends that petitioner's application for a writ of habeas corpus be **DENIED**.

### II. Background

Petitioner was originally arrested and charged with first-degree criminal sexual conduct (CSC), Michigan Compiled Laws § 750.520b(1), but he later signed a plea agreement on April 17, 2003, in which he agreed to plead no contest to second-degree CSC, Michigan Compiled Laws § 750.520c, in exchange for the government amending the charge against him. Restitution and sentencing were to be determined by the court, but petitioner agreed not to object to a guideline sentence. (Plea Agreement, attached as Exhibit D to D/E 21, Defendant-Appellant's Application for Leave to Appeal and Request for Evidentiary Hearing in the Michigan Court of

-1-

Appeals, case No. 258118.) A transcript of the plea proceedings is unavailable because of a technical mishap.

On June 12, 2003, petitioner was sentenced. At sentencing, attorneys for both petitioner and the government raised and discussed a question regarding the scoring of petitioner's guidelines (D/E 19, Sentencing Transcript, p. 7-8). After that issue was resolved, the mother of the victim spoke about petitioner's crime and a letter from the victim was read into the record (D/E 19, Sentencing Transcript, p. 12-17). Subsequently, the court asked petitioner if he had anything to say. Petitioner stated that he had nothing to say, except that he wanted to correct something from the victim's letter, namely that the victim did know that he had spent time in prison before meeting her. Petitioner finished by saying, "other than that, I have nothing else to say." (D/E 19, Sentencing Transcript, p. 20-21). The court sentenced petitioner to 84 months to 22-1/2 years. The court also noted that it was sentencing petitioner within the guidelines. (D/E 19, Sentencing Transcript, p. 22-23).

Following sentencing, petitioner, through his new attorney, filed a motion for resentencing. At the hearing on that motion, petitioner's new counsel noted that there was no transcript of the entering of petitioner's plea. Petitioner's attorney argued that a transcript was essential because petitioner was asserting that his plea was involuntary, his previous attorney had told him he would receive a sentence of approximately three years, and that he tried to withdraw his plea prior to sentencing. (D/E 20, Transcript of Hearing on Motion for Resentencing, p. 2-4) The trial court noted that:

> In the plea taking process, the Court is pretty methodical about that. I pretty much go through the same routine every time with everyone; and certainly, the Court would have gone through the same routine with [petitioner] here.
>
> I would agree with the prosecution. I don't think it's appropriate to allow him to withdraw his plea because I do believe that the Court went over his rights, explained to him what the charges – charge was, asked [petitioner] to provide a factual basis to support the taking of the plea. And I eventually did take his plea, finding that it was freely, voluntarily and accurately made.
>
> And I think that there ought to be a record prepared, and I order the prosecution to prepare a record that would support that, a record that establishes that [petitioner] was put under oath. He was told what the charges were that he was gonna [sic] be pleading to.
>
> He was given his rights, as I generally give them, from the plea form that I normally have, which basically I've memorized. I really don't read it anymore. I just blurt it out because it's memorized.
>
> But I would have asked him what his age was, how old he was, could he read, write and understand the English language.
>
> I would have asked him, uh … [sic] Or told him that he had the right to have a lawyer represent him during trial and sentence; and that if he couldn't afford a lawyer, that a lawyer would have been appointed to represent him. [D/E 20, Transcript of Hearing on Motion for Resentencing, p. 9-10]

After being asked how petitioner's counsel could know what petitioner's answers were, the trial court responded:

> Well, because I took the plea, his answers had to be that he understood those, because the Court eventually got to the point where he accepted his plea. And just prior to accepting the plea, I always asked is your plea made freely, understandingly and voluntarily made?

You do understand that once your plea is accepted, there is no absolute right to appeal. You have to ask permission from the Court of Appeals. Those of some of he questions that I ask.

I certainly would have asked him or told him that if he was on probation or parole for any prior offense, pleading guilty could result in imprisonment for that prior offense.

I would have told him that if he had previously been convicted of a felony, that he could be charged as an habitual offender.

I would have told him that he has the right to a trial by jury or by the Court without a jury.

I would have told him that he has the right to confront the witnesses against him, to have a lawyer cross-examine the witnesses, and compulsory process for obtaining witnesses on his behalf.

I would have told him that a plea of guilty constitutes a conviction.

I would have told him that once his plea was accepted, that there would be no right o a trial; that he would give up all his rights that he would normally have.

And I would have accepted his plea by asking him how does he plead.

And I would have looked at the Information, as I normally do, asked him the dates, you know, did you commit this offense on the date and the place where the Information indicated?

And I would have solicited – or elicited from him a factual basis to support the acceptance of the plea.

I would have then, of course, turned to the attorneys, asked them if they had any questions; and then I would have asked the attorney has the Court complied with the Court rule? [D/E 20, Transcript of Hearing on Motion for Resentencing, p.11-12]

After being reminded that the plea in this case was no contest, the trial court continued:

> Okay, well, then I would have asked him to provide me with the factual basis to support the plea. I would have read whatever that factual basis would be; whether it would have been the Circuit Court History [sic], the police report, or the Preliminary Exam transcript.
>
> And then I would have, of course, asked the attorneys if they had any questions. They would have said – If they said no, then I would have asked them has the Court complied with the Court Rule?
>
> Once they would have told me that, then I would have accepted his plea and set it for sentencing.
>
> This, of course, was set for sentencing, so that again is an indication that the Court had gone through all of those steps and then set the matter for sentencing. [D/E 20, Transcript of Hearing on Motion for Resentencing, p.12-13]

Later at the hearing on the motion for resentencing, petitioner's attorney asked, in support for petitioner's ineffective assistance of counsel claim, for a hearing to establish what occurred at the plea entry (D/E 20, Transcript of Hearing on Motion for Resentencing, p. 43), but the trial court found that there was no basis for such a hearing (D/E 20, Transcript of Hearing on Motion for Resentencing, p. 45).

On August 30, 2004, the trial court entered a Settled Statement of Facts and Order that, pursuant to MCR 7.210(B)(2)(c), served as a substitute for the missing plea transcript. Those settled facts were that:

> 1. That [petitioner] was charged with 1 count of Criminal Sexual Conduct 1st Degree.
>
> 2. That [petitioner] plead Nolo Contendere to an amended count of Criminal Sexual Conduct 2nd Degree on July 17th, 2003 pursuant to a plea agreement signed by [petitioner] stating that [petitioner] would acknowledge Habitual Offender 2nd status and no sentence agreement.

-5-

3. That a transcript of the plea proceedings is now unavailable as it cannot be obtained from a court reporter or recorder and the trial court shall settle any controversy by certifying a settled statement of facts to serve as a substitute for the missing plea transcript in [petitioner's] case under MCR 7.201(B)(2)(c).

4. That the court advised petitioner of the following rights from plea form [sic]:
   (a) to be tried by jury
   (b) to be tried by the court without a jury if all parties consent
   (c) to be presumed innocent until proved guilty
   (d) to have the prosecutor prove [petitioner] guilty beyond a reasonable doubt
   (e) to have witnesses against [petitioner] appear at trial
   (f) to question the witnesses against [petitioner]
   (g) to have the court order [petitioner's] witnesses appear at trial
   (h) to remain silent during trial
   (I) to not have that silence used against [petitioner]
   (j) to testify at the trial if [petitioner] wants testify

5. That [petitioner] was advised that he was giving up any claim that the plea was the result of promises or threats that were not disclosed to the court at the plea proceeding, or that it was not [petitioner's] own choice to enter the plea.

6. That any appeal from the conviction and sentence pursuant to the plea would be by application for leave to appeal and not by right.

7. That the terms of the plea were stated and the parties confirmed the terms of the plea with [petitioner] and Defense Counsel

8. That the court inquired of [petitioner] in reference to the plea agreement:
   (a) whether anyone had promised anything beyond what is in the plea agreement
   (b) whether anyone has threatened [petitioner]
   (c) whether it is [petitioner's] own choice to plead guilty

9. That the court established a factual basis by reviewing the police reports and/or the preliminary exam transcript.

10. That the court made a finding that the nolo contendere plea was appropriate.

11. That the court asked the prosecutor and defense counsel if the court had complied with all court rules and the court heard no objection.

On May 9, 2006, petitioner filed an application under 28 U.S.C. § 2254 for writ of habeas corpus (D/E 1). Within that petition, petitioner alleged that the unavailability of the plea transcript denied him due process. Petitioner also alleged that his plea was illusory because his trial counsel told him at first that he would only received a sentence of three years and, later, that he would probably get five to seven years. Petitioner further alleged that he was denied his right to effective assistance of counsel by his trial counsel's statement regarding his sentence and that the government had failed to live up its promises under the plea agreement.

### III. Discussion

**1. Standard of Review**

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state court's adjudication of his claims on the merits "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases-indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) ( per curiam opinion) (emphasis in original).

### 2. Effect of Unavailable Transcript

Petitioner first argues that he was denied due process by the absence of a transcript of the entry of his plea. Although the Supreme Court has held that the due process clause is violated if an indigent defendant is denied a transcript, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (plurality opinion), that a state may not block an indigent petty offender's access to an appeal afforded others, Mayer v. Chicago, 404 U.S. 189, 195-96, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), and that a new court-appointed attorney who represents an indigent attorney on appeal (but not at trial) is entitled to the entire trial transcript at public expense, Hardy v. United States, 375 U.S. 277, 279-80, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), it has never held that the absence of a portion of a trial transcript automatically entitles the defendant to a retrial. Moreover, in Mayer, the Supreme Court acknowledged that a "complete" record did not require a verbatim transcript, so long as the state found another means of providing an adequate record. Mayer, 404 U.S. at 194. In other words, Mayer does not stand for the proposition that where a portion of a trial transcript is missing and unobtainable, and where a defendant makes a claim that could possibly implicate that portion of the transcript, a retrial is always necessary. Scott v.

Elo, 302 F.3d 598, 604 (6th Cir.2002) (rejecting that the failure to transcribe a significant portion of the closing argument denied the petitioner due process).

Instead, federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice. Scott, 302 F.3d 604, Bransford v. Brown, 806 F.2d 83, 86 (6th Cir.1986). In Bransford, the Sixth Circuit rejected the view that the unavailability of transcripts of jury instructions was a per se violation of due process and held that a petitioner "must show prejudice resulting from the missing transcripts." Bransford, 806 F.2d at 86. The Sixth Circuit also stated that "[a]lthough this court recognizes the inherent difficulty in demonstrating prejudice where the transcripts are missing, petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal." Bransford, 806 F.2d at 86.

In this case, petitioner only offers gross speculation regarding prejudice and he has failed to meet his burden. On April 17, 2003, petitioner signed a plea agreement indicating that, in exchange for the government amending the first-degree CSC charge to second-degree CSC, petitioner would plead no contest. However, beyond stating that petitioner would not object to a guideline sentence, the plea agreement did not address petitioner's sentence. Moreover, there is a transcript of the sentencing hearing in the record. At that hearing, neither petitioner nor petitioner's counsel challenged the validity of the plea. Petitioner's counsel only challenged the scoring of the guidelines (p. 7-8) and petitioner merely sought to contradict a statement made by the victim's mother (p. 20-21). MCR 7.120(B)(2)(c) provides a procedure for Michigan state courts to follow when a transcript becomes unavailable. Here, in accordance with that procedure, the state trial court found that it had advised petitioner of his constitutional rights and

ensured that the plea was knowing and voluntary. By merely speculating regarding any prejudice he has suffered, plaintiff has failed to show a constitutional violation.

### 3. Validity of Plea

Petitioner also alleges that his plea was not intelligent or voluntary because his attorney told him he would receive a different sentence that the one he actually received. The Supreme Court has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Such a showing is generally made by the government's production of a transcript of state court proceedings to establish that the plea was made voluntarily. Garcia v. Johnson, 991 F.2d 324, 326 (6th Cir.1993).

In this case, while the transcript of the state court plea proceedings is unavailable, the facts found by the trial court, the plea agreement, and the sentencing transcript establish that petitioner's plea was intelligent and voluntary. The plea agreement expressly provided that petitioner's sentence was to be determined by the court and petitioner never alleged that a separate agreement existed when he was sentenced. Within the settled facts, the trial court asked petitioner if he understood what the plea was and petitioner answered in the affirmative. The trial court also ensured that petitioner had conferred with defense counsel. The trial court went on to explain the specific rights petitioner was waiving by pleading no contest. Furthermore, the trial court checked to make sure that there were no other promises or any threats. Therefore, the

state court did not err in finding that petitioner understood the consequences of his plea. The state court's findings are entitled to considerable deference under AEDPA. McAdoo v. Elo, 365 F.3d 487, 497 (6th Cir. 2004). A federal court may grant habeas relief only where the state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Considering the record here, this court cannot say that the state court's determination that petitioner knowingly and voluntarily entered his plea was unreasonable.

### 4. Ineffective Assistance of Counsel

Petitioner's third claim is that he was denied the effective assistance of counsel because of his trial counsel's statements regarding the sentence he would receive. The test for determining whether counsel is constitutionally ineffective was set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a petitioner must first show that counsel's performance was deficient. To do so, the petitioner must prove that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious that they deprived petitioner of a fair trial. Strickland, 466 U.S. at 687.

In this case, petitioner merely alleges that a conversations took place between he and his trial counsel in which trial counsel stated that petitioner would be sentence to three years or five to seven years. However, his signed plea agreement clearly does not provide that and at the time

of his plea, as found by the trial court, petitioner stated that there were no other promises leading him to plead no contest. Petitioner also failed to raise this issue when he was sentenced. Given those facts, petitioner has failed to show that his trial counsel's performance was deficient or that counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment.

### 5. The Government's Fulfillment of Plea Agreement

Petitioner's fourth argument is that the government violated the terms of his plea agreement when petitioner was sentenced to 84 months to 22 and a half years. "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." United States v. Lukse, 286 F.3d 906, 910 (6th Cir. 2002) (citations omitted). In this case, there is absolutely no evidence of a agreement on a specific sentence for petitioner. As discussed above, his plea agreement states that sentencing were to be determined by the court and that petitioner agreed not to object to a sentence within the guidelines. Moreover, the trial court found that petitioner stated on the record that there were no other promises inducing him to sign the plea agreement other than what was contained within the plea agreement. At sentencing, petitioner never raised the issue of an agreed upon sentence. Thus, petitioner has failed to show that the government failed to fulfill the terms of the plea agreement.

## IV. Conclusion

For the reasons stated above, the court recommends that petitioner's application for a writ of habeas corpus be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                s/Virginia M. Morgan  
                                                Virginia M. Morgan  
Dated: September 24, 2007          United States Magistrate Judge

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on September 24, 2007.
                                                s/Jane Johnson  
                                                Case Manager to  
                                                Magistrate Judge Virginia M. Morgan